

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK W. DOBRONSKI,
an individual,

                  **Plaintiff,**

v.

GEN DIGITAL INC.,
a Delaware corporation,

                  **Defendant.**

Case: 2:25-cv-13041
Assigned To : Murphy, Stephen J., III
Referral Judge: Stafford, Elizabeth A.
Assign. Date : 9/26/2025
Description: CMP DOBRONSKI V. GEN DIGITAL INC. (NA)

---

## **COMPLAINT**

NOW COMES the Plaintiff MARK W. DOBRONSKI ("Plaintiff"), appearing *in propria persona*, and for his complaint against Defendant GEN DIGITAL INC. ("Defendant"), alleges:

1.    This is a consumer rights case under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, and the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*

### Parties

2.    Plaintiff is an individual, of the age of majority, a citizen of the United States of America, has a domicile and place of business in Orange County, Florida,



1

has a residence and place of business in Washtenaw County, Michigan, and has a place of business in Wayne County, Michigan.

3.     Defendant is a corporation organized and existing under the laws of the State of Delaware, with its principal office located at 60 East Rio Salado Parkway, Suite 1000, Tempe, Maricopa County, Arizona 85281.

4.     Defendant is registered and qualified to do business in the State of Michigan, with a registered office located at 3410 Belle Chase Way, Suite 600, Lansing, Michigan 48911.

Jurisdiction

5.     This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

6.     This Court has limited personal jurisdiction over Defendant, pursuant to M.C.L. § 600.715, as a result of the defendant: transacting business within this state; and/or, doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

Venue

7.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received by Plaintiff in this judicial district, to wit: at Plaintiff's residence in Washtenaw County, Michigan.

## Preliminary Statement

8.      As the Supreme Court recently explained, "Americans passionately disagree amount many things.  But they are largely united in their disdain for robocalls." *Barr v. American Association of Political Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

9.      The Federal Government receives a staggering number of complaints about robocalls – 3.7 million complaints in 2019 alone. *Id.*

10.      In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent persons, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

11.      According to the Federal Communications Commission ("FCC"), "unwanted calls and texts are the number one complaint to the FCC."

12.      In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the TCPA, explained, "computerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall . . . these computerized telephone calls

threaten our personal safety . . . These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." *In re Rules and Reguls. Implementing the TCPA*, 17 FCC Rcd. 17459, 17474, fn. 90, 2002 WL 31083949 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

13.     According to YouMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2023 alone, American consumers were bombarded with over 55.05 *billion* robocalls; an average of over 165 robocalls to each and every man, woman, and child. [Source: www.robocallindex.com].

14.     In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source:  www.cndb.com/2021/06/29/Americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

15.     Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

16.     As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in

enforcing federal law.

## Telephone Consumer Protection Act

17.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and invasion of privacy to consumers specifically, but were also a threat to interstate commence generally. *See* S. Rep. No. 102-178, at 2-3, 1991 U.S.C.C.A.N. 1968, 1969-71, 1991 WL 211220 (1991).

18.     The TCPA imposes restrictions on the use of automated telephone equipment.  47 U.S.C. § 227(b)(1).

19.     Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement the aforesaid restrictions on use of automated telephone equipment. The TCPA implementing regulations are promulgated at 47 C.F.R. § 64.1200(a), *et seq*.

20.     As part of the restrictions on use of automated telephone equipment, Congress created a private right of action for aggrieved persons to received $500.00 in damages for *each* violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(b)(3).

21.     Additionally, the Congress also sought to protect subscriber privacy rights, and directed the FCC to initiate a rulemaking proceeding to compare and evaluate alternative methods and procedures, and to develop proposed regulations to implement the methods and procedures that the FCC determines are most efficient to accomplish the need to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 C.F.R. § 227(c)(1). The FCC conducted such a rulemaking and implemented regulations to protect telephone subscribers' privacy rights. See *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144, 2003 WL 21713245 (July 25, 2003).

22.     As part of the protection of subscriber privacy rights, Congress created a private right of action for aggrieved persons to receive $500.00 in damages for *each* violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(c)(5).

Michigan Home Solicitation Sales Act

23.     The Michigan Legislature has also enacted statutes governing and restricting telephone solicitors from making or causing to be made a telephone solicitation to a residential telephone subscriber.   The restrictions include a

prohibition on telephone solicitations using in whole or in part a recorded message. M.C.L. § 445.111(a)(1). A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number appears on the national do-not-call list. M.C.L. § 445.111(a)(4). Telephone solicitors must properly identify themselves and their organization. M.C.L. § 445.111b(1) and (2). Telephone solicitors may not block or otherwise interfere with the caller ID function of the telephone. M.C.L. § 445.111b(3)

24. The MHSSA provides that a person who suffers a loss as a result of violation of the MHSSA may bring an action to recover actual damages or $250.00, together with reasonable attorney fees. M.C.L. § 445.111c(3).

General Allegations

25. Plaintiff's residential and cellular telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, some claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

7

26.     Plaintiff's cellular telephone number is 734-***-****.

27.     Plaintiff's cellular telephone number 734-***-**** is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least December 9, 2004, and at all times subsequent thereto and relevant hereto.

28.     Plaintiff uses his cellular telephone number 734-***-**** primarily for personal, family, and household communications, and not for business purposes.

29.     By listing his cellular telephone number on the National Do Not Call Registry, Plaintiff has given constructive notice to the World, including the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential telephone number.

30.     Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations. *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 598, 101 S.Ct. 1266, 1276, 67 L.Ed.2d 521 (1981) ("the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong . . .").

31.     The FCC has declared that wireless subscribers who ask to be put on the national do-not-call list are presumed to be "residential subscribers." *In re Rules & Reguls. Implementing the TCPA*, 18 FCC Rcd. 14014, 14039, ¶ 36 (2003).

32. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In re Rules and Reguls. Implementing the TCPA*, 30 FCC Rcd. 7961, 8000-8001, ¶ 73 (2015).

33. Plaintiff is the customary user of the called telephone line, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's provisions. *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (3rd Cir., 2015).

34. A text message is a "call" within the meaning of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016).

35. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendants.

36. At no time has Plaintiff provided permission to the Defendants to engage in telephone solicitation with the Plaintiff via telephone.

37. At no time has Plaintiff provided "prior express consent" or "prior express written consent" (as those terms are defined under the TCPA and as

9

interpreted by the FCC) for any of the Defendants or anyone acting on behalf of the Defendants to initiate any telephone call using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's cellular telephone number.

38.    At no time relevant hereto has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with the Defendants.

39.    The FCC has declared that a necessary element for a person to provide "consent" is that the person must knowingly and voluntarily provide the telephone number at which they are authorizing telemarketing calls to be received at.  For example, capturing a caller's telephone number by a Caller ID or ANI device cannot be considered consent to receive telemarketing calls. *In re Rules and Reguls. Implementing the TCPA*, 7 FCC Rcd. 8752, 8769, ¶ 31 (1992).

40.    The FCC has further declared that persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, if the caller is making calls within the scope of the consent given, and absent instructions to the contrary.  *In re Rules and Reguls. Implementing the TCPA*, 30 FCC Rcd. 7961, 8028, ¶ 141 (2015).

41.    At no time relevant hereto has Plaintiff released his phone number to any of the Defendants in order to have given invitation or permission to be called at that

number for any telephone call that includes or introduces an advertisement or constitutes telemarketing, or any call using an automatic telephone dialing system or an artificial or prerecorded voice.

42.     Similarly, for purposes of an "established business relationship," the FCC has declared that a consumer inquiry cannot be considered to create a business relationship where the consumer's number has been captured absent that consumer's express invitation or permission to be contacted at the captured number. *In re Rules and Reguls. Implementing the TCPA*, 7 FCC Rcd. 8752, 8771, n. 67 (1992).

43.     Consent cannot be "presumed." The TCPA and the Commission's rules plainly require express consent, not implied or "presumed" consent. *In re Rules and Reguls. Implementing the TCPA*, 30 FCC Rcd. 7961, 7991, ¶ 52 (2015).

44.     Consumers have a right to revoke consent, using any reasonable method including orally or in writing. *In re Rules & Reguls. Implementing the TCPA*, 30 FCC Rcd. 7961, 7996, ¶ 64 (2015).

45.     The TCPA requires only that the called party clearly express his or her desire not to receive further calls. *In re Rules & Reguls. Implementing the TCPA*, 30 FCC Rcd. 7961, 7997, ¶ 67 (2015).

46.     The TCPA places no affirmative obligation on a called party to opt out of calls to which he or she never consented; the TCPA places responsibility on the

caller alone to ensure that he or she has valid consent for each call made. *In re Rules and Reguls. Implementing the TCPA*, 30 FCC Rcd. 7961, 8004, ¶ 81 (2015).

47.    The FCC has declared that "[p]urporting to obtain consent during the call... does not constitute the *prior* consent necessary to deliver the message in the first place as the request... is part of the telemarketing." *In re Rules and Reguls. Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, ¶ 142 (2003) [Emphasis as in original].

48.    Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

49.    For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

50.    For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

51.    For each and every call alleged herein initiated to Plaintiff's telephone line, Defendant caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

52.    Each and every call placed without consent by Defendant alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

53.    For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

<u>The Scheme</u>

54.    Upon information and belief, the scheme works as follows.

55.    Defendant is a multinational software company that provides cybersecurity software, financial technology, and services.

56.    Defendant's brands include Norton, Avast, LifeLock, Avira, AVG, ReputationDefender, MoneyLion and CCleaner.

57.    Defendant utilizes telemarketing as a cost effective way of reaching out to thousands and upon thousands of consumers who potentially have need for the products and services offered by Defendant's brands.

58.    Defendant initiates telephone calls *en masse* using automated telephone dialing systems which have the capacity to store or produce telephone numbers to be called using a random or sequential number generator to dial such numbers, to solicit consumers.

59.    Defendant inputs lists of names and telephone numbers of consumers into their automated telephone dialing system, and the automated system will then, using the random or sequential number generator, select numbers from the lists and dials then, and then dials the consumers' telephone numbers.

60.    The automated system then sends SMS text messages or automated or pre-recorded voice messages to the targeted consumers advertising the products and services offered by the Defendant's brands.

61.    Defendant is fully knowledgeable that its conduct is violative of the TCPA, as Defendant has been haled as a defendant into district courts facing similar allegations of TCPA violative conduct.

14

**The Calls**

Call 1

62.    On August 26, 2025, at 11:09 A.M., Defendant or Defendant's agent

initiated the sending of the following SMS text message from short code 68697 to

Plaintiff's cellular telephone number 734-***-****:

> Hello MARKW, this message
> is from Norton. Your account
> is not current and your
> product Norton 360 with
> LifeLock Select for Family
> may be at risk of cancelling.
> Please call 1-844-346-3613
> or go to https://my.norton
> .com/Auth/Login?nosignup
> =true&returnUrl=%2Fextspa
> %2Faccount%2Fbillinginfo
> %3Fom_ext_cid%3Dext_sms
> _failed_bill_mynorton-login
> to update your billing
> information to continue your
> protection. Reply HELP for
> assistance, STOP to opt out.
> Msg & Data rates apply.

Call 2

63.    On August 29, 2025, at 2:02 P.M., Defendant or Defendant's agent

initiated a telephone call to Plaintiff's cellular telephone number 734-***-****.

64.    The caller identification number information displayed was 855-954-

3700, and the caller identification name information displayed was NORTON AND

LIFELOCK.

65.    Upon answering the incoming call, Plaintiff heard a click sound,

followed by approximately 4 seconds of silence, followed by an artificial or pre-

recorded voice message stating as follows:

> "Hello M A R K W.  This is an important message from
> Norton. If you wish to hear this message, please stay on the
> line.  Otherwise, please press any key to opt out. [5 second
> delay.]  Hello M A R K W, this is a call from Norton to let
> you know that we have been unable to process your recent
> payment.  The reason could be as simple as an expired
> payment card on file.  In order to continue your service,
> you can either press any key now to be transferred to a live
> agent or go online to mynorton.com.  After logging in,
> hover over your name in the top right corner and click
> "manage my subscription," then click on the billing
> information tab to update your payment information.  As
> always, you can call NortonLifelock at 877-538-0844.
> Again, that's 877-538-0844.  Thank you and have a nice
> day."

<u>Call 3</u>

66.   On August 29, 2025, at 4:37 P.M., Defendant or Defendant's agent

initiated the sending of the following SMS text message from short code 68697 to

Plaintiff's cellular telephone number 734-***-****:

> Hello MARKW, please hold for an
> important message from NORTON.
> Hello MARKW, This is a call from
> NORTON to let you know that
> we have been unable to process
> your recent payment. The reason
> could be as simple as an expired
> payment card on file. In order to
> continue your service, you can
> either press any key now to be
> transferred to a live agent, or go
> online at my.norton.com. After
> logging in, hover over your name
> on the top right corner and select
> Manage my subscriptions then click
> on the Billing information tab to
> update your payment information.
> As always, you can call Norton Life
> Lock any time at 877-538-0844,
> again that is 8 7 7 5 3 8 0 8 4 4.
> Thank you, and have a great day.

<u>Do-Not-Call Demand 1</u>

67.     On August 29, 2025, at 4:38 P.M., Plaintiff initiated a telephone call to Norton at the telephone number provided during recorded message in Call 2 and the SMS text message in Call 3, to wit: 877-538-0844.

68.     Plaintiff was connected to a live representative who identified herself as Rayah (phonetic) from Norton.

69.     Plaintiff informed Rayah that Plaintiff has been receiving unwanted SMS text messages and recorded message robocalls from Norton, that Plaintiff has not provided consent or permission for Norton to initiate such calls to Plaintiff.

70.     Plaintiff provided Rayah with Plaintiff's telephone number 734-***-**** and made demand that Plaintiff's telephone number be placed upon Norton's do-not-call list.

71.     Rayah asked for Plaintiff's name and email address, which Plaintiff provided.

72.     Rayah informed Plaintiff that she could not find any account associated with Plaintiff.

73.     Rayah then asked for Plaintiff's Social Security Number, which Plaintiff refused to provide.

74.     Rayah stated that the only way she could add Plaintiff's telephone

number to Norton's do-not-call list was to be provided Plaintiff's Social Security Number in order that Norton could verify Plaintiff's identity.

75.    Plaintiff informed Rayah that the TCPA expressly allows a consumer to be placed upon an entity's do-not-call list merely by providing name and telephone number, and that there is no requirement that a consumer must further prove their identity.

76.    Rayah stated that she could not assist Plaintiff and abruptly terminated the call.

Do Not Call Demand 2

77.    On August 30, 2025, at 7:18 P.m., Plaintiff initiated a telephone call to Norton at the telephone number provided during recorded message in Call 2 and the SMS text message in Call 3, to wit: 877-538-0844.

78.    Plaintiff was connected to a live representative who identified herself as Anthony from Norton.

79.    Plaintiff informed Anthony that Plaintiff has been receiving unwanted SMS text messages and recorded message robocalls from Norton and that Plaintiff has not provided consent or permission for Norton to initiate such calls to Plaintiff.

80.    Plaintiff made demand to Anthony that Plaintiff's telephone number be placed upon Norton's do-not-call list.

81.    Anthony explained that they had no way to do add Plaintiff's telephone number to a do-not-call list other than to locate Plaintiff's account, and suggested that Plaintiff should just "block" the telephone number in order not to receive further calls.

<u>Call 4</u>

82.    On September 6, 2025, at 11:15 A.M., Defendant or Defendant's agent initiated the sending of the following SMS text message from short code 68697 to Plaintiff's cellular telephone number 734-***-****:

> Norton Alert: MARKW, your
> membership will be expiring
> soon and your billing info
> is out of date. To renew
> your subscription please
> call 1-844-346-3613 or go
> to https://my.norton.com
> /Auth/Login?nosignup=
> true&returnUrl=%2Fextaps
> %2Faccount%2Fbillinginfo
> %3Fom_ext_cid%3Dext_sms
> _failed_bill_mynorton-login
> to ensure there is no lapse in
> your protection. Reply HELP
> for Assistance. STOP to opt
> out. Msg & Data rates apply.

<u>Call 5</u>

83.    On September 12, 2025, at 2:30 P.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's cellular telephone number 734-***-****.

84.    The caller identification number information displayed was 855-954-3700, and the caller identification name information displayed was NORTON AND LIFELOCK.

85.     Upon answering the incoming call, Plaintiff heard a click sound, followed by approximately 4 seconds of silence, followed by an artificial or pre-recorded voice message in a male voice stating as follows:

> "Hello M A R K W.  This is an important message from Norton. If you wish to hear this message, please stay on the line.  Otherwise, please press any key to opt out. [5 second delay.]  Hello M A R K W, this is your last reminder call from Norton.  According to our billing records, your Norton Utilities Ultimate is about to be cancelled if you do not act quickly.  The reason could be as simple as an expired payment card on file.  Please press any key now to be transferred to a live agent or go online to mynorton.com."

86.     The line went silent for approximately 5 seconds, then was followed by an artificial or prerecorded voice message in a female voice stating:

> "Welcome to Norton and Lifelock customer support. Please press '9' to be connected to an agent."

87.     Plaintiff pressed '9' and was connected to a live female agent who identified herself as "Arvey" (phonetic) with Norton and Lifelock Customer Support.

88.     Plaintiff made demand to Arvey to be provided a copy of Norton's written do-not-call policy.  Arvey responded that they did not have one.

89.     Plaintiff inquired of Arvey whether she has received any training on any do not call policy, to which Arvey responded: "No, sir."

90.     Plaintiff inquired of Arvey as to her company's mailing address.  Arvey

could not provide an address.

91.    Plaintiff inquired of Arvey as to a telephone number that Plaintiff could call to make a do-not-call demand.  Arvey could not provide any telephone number.

92.    Plaintiff directed Arvey to place Plaintiff's telephone number on Norton's do-not-call list.  Arvey confirmed with Plaintiff the telephone number that her computer showed that he  automated dialer had dialed, which was Plaintiff's cellular telephone number 734-***-****.  Arvey stated that she had placed Plaintiff's telephone number of their do-not-call list and Plaintiff would not be receiving further calls.

<u>Call 6</u>

93.    On September 12, 2025, at 4:32 P.M., Defendant or Defendant's agent initiated the sending of the following SMS text message from short code 68697 to Plaintiff's cellular telephone number 734-***-****:

Hello MARKW, Your Norton
Utilities Ultimate protection
will expire soon. If you
wish to continue your
subscription, click here:
https://buy.norton.com
/redirector/alr?elrPSN=PSN
&ctry=US&lang=en&otype
=cip&om_ext_cid=ext_sms
_nston-renew

Reply STOP to opt out
Msg&Data rates apply.

<u>Call 7</u>

94.    On September 20, 2025, at 7:56 P.M., Defendant or Defendant's agent

21

initiated the sending of the following SMS text message from short code 68697 to

Plaintiff's cellular telephone number 734-***-****:

> Norton Alert: MARKW, your
> membership will be expiring
> soon and your billing info
> is out of date. To renew
> your subscription please
> call 1-844-346-3613 or go
> to https://my.norton.com
> /Auth/Login?nosignup=
> true&returnUrl=%2Fextaps
> %2Faccount%2Fbillinginfo
> %3Fom_ext_cid%3Dext_sms
> _failed_bill_mynorton-login
> to ensure there is no lapse in
> your protection. Reply HELP
> for Assistance. STOP to opt
> out. Msg & Data rates apply.

## CAUSES OF ACTION

### COUNT I
### TCPA VIOLATION - 47 C.F.R. § 64.1200(a)(1)(iii)

95.    Plaintiff incorporates the allegations of paragraphs 1 through 94, *supra*.

96.    Each of Calls 1 through 7, *supra*, were in violation of the TCPA, and

specifically 47 C.F.R. § 64.1200(a)(1)(iii), as Defendant or Defendant's agent

initiated a telephone call, other than for emergency purposes and without the prior

express consent of the called party, using an automatic telephone dialing system or

an artificial or prerecorded voice, to a cellular telephone service.

97.    The aforesaid violations of the TCPA were willful and/or knowing as is

evidenced by the repetitive number of calls and violations, as well as the fact that the

calls continued even after Plaintiff made express do-not-call demands.

## COUNT II
## TCPA VIOLATION - 47 C.F.R. § 64.1200(a)(2)

98.    Plaintiff incorporates the allegations of paragraphs 1 through 94, *supra*.

99.    Each of Calls 1 through 7, *supra*, were in violation of the TCPA, and specifically 47 C.F.R. § 64.1200(a)(2), as Defendant or Defendant's agent initiated, or caused to be initiated, a telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to a telephone number assigned to a cellular telephone service, and without the prior express written consent of the called party.

100.   The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations, as well as the fact that the calls continued even after Plaintiff made express do-not-call demands.

## COUNT III
## TCPA VIOLATION - 47 C.F.R. § 64.1200(a)(3)

101.   Plaintiff incorporates the allegations of paragraphs 1 through 94, *supra*.

102.   Each of Calls 1 and 5, *supra*, were in violation of the TCPA, and specifically 47 C.F.R. § 64.1200(a)(3), as Defendant or Defendant's agent initiated, a telephone call to a residential line using an artificial or prerecorded voice to deliver a message that includes or introduces an advertisement or constitutes telemarketing without the prior express written consent of the called party.

103. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

**COUNT IV**
**TCPA VIOLATION - 47 C.F.R. § 64.1200(a)(7)**

104. Plaintiff incorporates the allegations of paragraphs 1 through 94, *supra*.

105. A call is "abandoned" if it is not connected to a live sales representative within two (2) seconds of the called person's completed greeting.  47 C.F.R. § 64.1200(a)(7).

106. Each of Calls 2 and 5, *supra*, were abandoned as each call was not connected to a live sales representative within two (2) seconds of the called person's completed greeting.

107. The fact that two (2) of the two (2) recorded message calls received by Plaintiff from Defendant were abandoned strongly infers that Defendant abandons more than three percent of all telemarketing calls that are answered live by a person, as measured over a 30–day period for a single calling campaign.

108. Each of Calls 2 and 5, *supra*, were in violation of the TCPA, and specifically 47 C.F.R. § 64.1200(a)(7), as Defendant or Defendant's agent abandoned more than three percent of all telemarketing calls that are answered live by a person, as measured over a 30–day period for a single calling campaign.

109. The aforesaid violations of the TCPA were willful and/or knowing as is

evidenced by the repetitive number of calls and violations.

## COUNT V
### TCPA VIOLATION - 47 C.F.R. § 64.1200(a)(7)(i)(A)

110. Plaintiff incorporates the allegations of paragraphs 1 through 94, *supra*.

111. Each of Calls 2 and 5, *supra*, were in violation of the TCPA, and specifically 47 C.F.R. § 64.1200(a)(7)(i)(A), as Defendant or Defendant's agent initiated a call where a live sales representative was not available to speak with the person answering the call, within two (2) seconds after the called person's completed greeting, and the telemarketer or the seller did not provide a prerecorded identification and opt-out message that is limited to disclosing that the call was for "telemarketing purposes" and stating a telephone number for such business, entity, or individual that permits the called person to make a do-not-call request.

112. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

## COUNT VI
### TCPA VIOLATION - 47 C.F.R. § 64.1200(a)(7)(i)(B)

113. Plaintiff incorporates the allegations of paragraphs 1 through 94, *supra*.

114. Each of Calls 2 and 5, *supra*, were in violation of the TCPA, and specifically 47 C.F.R. § 64.1200(a)(7)(i)(B), as Defendant or Defendant's agent initiated a call where a live sales representative was not available to speak with the person answering the call, within two (2) seconds after the called person's completed

greeting, and the telemarketer or the seller did not provide an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call, including brief explanatory instructions on how to use such mechanism.

115. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

### COUNT VII
### TCPA VIOLATION - 47 C.F.R. § 64.1200(c)(2)

116. Plaintiff incorporates the allegations of paragraphs 1 through 94, *supra*.

117. Each of Calls 1 through 7, *supra*, were in violation of the TCPA, and specifically 47 C.F.R. § 64.1200(c)(2), as Defendant or Defendant's agent initiated a telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government and having not obtained the subscriber's prior express invitation or permission and not having a personal relationship with the recipient of the call.

118. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

### COUNT VIII
### TCPA VIOLATION - 47 C.F.R. § 64.1200(d)

119. Plaintiff incorporates the allegations of paragraphs 1 through 94, *supra*.

120. The fact that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls is evidenced by the express statement of Defendant's agent during Call 5 that they did not have one.

121. Each of Calls 1 through 7, *supra*, were in violation of the TCPA, and specifically 47 C.F.R. § 64.1200(d), as Defendant or Defendant's agent initiated a telephone call for telemarketing purposes to a residential telephone subscriber without having instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity.

122. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

## COUNT IX
## TCPA VIOLATION - 47 C.F.R. § 64.1200(d)(1)

123. Plaintiff incorporates the allegations of paragraphs 1 through 94, *supra*.

124. Call 5 was in violation of the TCPA, and specifically 47 C.F.R. § 64.1200(d)(1), as Defendant or Defendant's agent did not have a written policy, available upon demand, for maintaining a do-not-call list in response to Plaintiff's express demand for same.

125. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

## COUNT X
## TCPA VIOLATION - 47 C.F.R. § 64.1200(d)(2)

126.   Plaintiff incorporates the allegations of paragraphs 1 through 94, *supra*.

127.   Call 5 was in violation of the TCPA, and specifically 47 C.F.R. § 64.1200(d)(1), as Defendant or Defendant's agent admitted that she had not been informed and trained in the existence and use of the do-not-call list.

128.   The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

## COUNT XI
## TCPA VIOLATION - 47 C.F.R. § 64.1200(d)(3)

129.   Plaintiff incorporates the allegations of paragraphs 1 through 94, *supra*.

130.   During Do Not Call Demand 1 and Do Not Call Demand 2, Plaintiff made do-not-call requests to Defendant's agent, but the agents refused to record those requests.

131.   Despite Plaintiff having made the do-not-call requests, Defendant continued to initiate Calls 4, 5, 6, and 7 to Plaintiff's telephone number.

132.   During Call 5, Plaintiff made a do-not-call request to Defendant's agent, and the agent confirmed that she had added Plaintiff's telephone number to Defendant's do-not-call list.

133.   Notwithstanding that Plaintiff's telephone number was purportedly added to Defendant's do-not-call list during the course of Call 5, Defendant continued

to initiate Calls 6 and 7 to Plaintiff's telephone number.

134.  Each of Calls 4, 5, 6, and 7 were in violation of the TCPA, specifically 47 C.F.R. § 64.1200(d)(3), as Defendant or Defendant's agent failed to record Plaintiff's do-not-call request, and/or Defendant failed to honor said do-not-call request.

135.  The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

## COUNT XII
## TCPA VIOLATION - 47 C.F.R. § 64.1200(d)(4)

136.  Plaintiff incorporates the allegations of paragraphs 1 through 94, *supra*.

137.  The FCC has clarified that, with respect to the caller's name, a prerecorded message must contain, at a minimum, the legal name under which the business, individual or entity calling is registered to operate. The Commission recognizes that some businesses use " d/b/as" or aliases for marketing purposes. The rule does not prohibit the use of such additional information, provided the legal name of the business is also stated. *In Re Rules & Reguls. Implementing the TCPA*, 18 FCC Rcd. 14014, 14100, ¶ 144 (2003).

138.  Each of Calls 2 and 5, *supra*, were in violation of the TCPA, and specifically 47 C.F.R. § 64.1200(d)(4), as Defendant or Defendant's agent made an artificial or prerecorded-voice telephone call for telemarketing purposes and did not

provide the called party with the name of the entity on whose behalf the call is being made or, in the instance of Call 5, a telephone number at which the entity may be contacted.

139. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

**COUNT XIII**
**TCPA VIOLATION - 47 C.F.R. § 64.1601(e)**

140. Plaintiff incorporates the allegations of paragraphs 1 through 94, *supra*.

141. The requirement promulgated at 47 C.F.R. § 64.1601(e) that telemarketers transmit both caller identification name and caller identification number information also applies to SMS text messages. *Newell v. JR Cap., LLC*, No. CV 25-1419, 2025 WL 2004706, at *9 (E.D. Pa. July 16, 2025).

142. The caller identification name information required to be transmitted must be the actual name of the business entity, not a website URL. *Id.*, at *10.

143. Each of Calls 1 through 7, *supra*, were in violation of the TCPA, and specifically 47 C.F.R. § 64.1601(e), as Defendant or Defendant's agent initiated a telemarketing call but did not transmit caller identification information, including the name of the telemarketer or seller of which the telemarketing call is placed and a telephone number which must permit any individual to make a do-not-call request during regular business hours.

144.  The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations, as well is evidenced by the fact that Defendant or Defendant's agent had to take deliberate action to manipulate the caller identification information.

## COUNT XIV
## MHSSA VIOLATIONS

145.  Plaintiff incorporates the allegations of paragraphs 1 through 94, *supra*.

146.  Each of Calls 2 and 5, *supra*, were in violation of the MHSSA: specifically M.C.L. § 445.111a(1), as Defendant or Defendant's agent made a telephone solicitation that consists in whole or in part of a recorded message; M.C.L. § 445.111a(5), as Defendant or Defendant's agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then current version of the federal do-not-call list; and, M.C.L. § 445.111(b)(1), as Defendant or Defendant's agent making the telephone solicitation, at the beginning of a telephone solicitation, did not state a telephone number of the organization, which telephone number must have a natural person available to answer the telephone number at any time when telephone solicitations are being made.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against Defendant, as follows:

A.   Damages:

   I.   Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|------------|
| I | 7 |
| II | 7 |
| III | 2 |
| IV | 2 |
| V | 2 |
| VI | 2 |
| VII | 7 |
| VIII | 7 |
| IX | 1 |
| X | 1 |
| XI | 4 |
| XII | 2 |
| XIII | 7 |

A total of 51 violations at $500.00 per violation, for damages of
$25,500.00, which amount shall be trebled because the violations
were willful and/or knowing, for total damages of $76,500.00.

   ii.   Damages for violations of the MHSSA alleged at Count XIV: 2

violations at $250.00 per violation, for damages of $500.00;

The cumulative total amount of damages claimed in this action is
$77,000.00, and in the event of default judgment is the sum certain
damages amount that will be sought.

B.   An award of Plaintiff's taxable costs and disbursements incurred in the

filing and prosecution of this action;

C.   An injunction enjoining Defendants and/or Defendants' agents from initiating any telephone calls to Plaintiff's telephone numbers.

D.   Interest accruing from the date of filing until paid at the statutory rate; and,

E.   Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: September 23, 2025

_____
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

Case: 2:25-cv-13041
Assigned To : Murphy, Stephen J., III
Referral Judge: Stafford, Elizabeth A.
Assign. Date : 9/26/2025
Description: CMP DOBRONSKI V. GEN DIGITAL INC. (NA)

**(b)** County of Residence of First Listed Plaintiff   Orange, Fl.
*(EXCEPT IN U.S. PLAINTIFF CASES)*

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

PRO SE

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government
Plaintiff
- [X] 3   Federal Question
*(U.S. Government Not a Party)*
- [ ] 2   U.S. Government
Defendant
- [ ] 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product |    Product Liability | |    28 USC 157 |    3729(a)) |
| [ ] 140 Negotiable Instrument |    Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & |    Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
|    & Enforcement of Judgment |    Slander |    Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' |    Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted |    Liability | [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
|    Student Loans | [ ] 340 Marine |    Injury Product | |    New Drug Application | [ ] 470 Racketeer Influenced and |
|    (Excludes Veterans) | [ ] 345 Marine Product |    Liability | | [ ] 840 Trademark |    Corrupt Organizations |
| [ ] 153 Recovery of Overpayment |    Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
|    of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards |    Act of 2016 |    (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending |    Act | | [X] 485 Telephone Consumer |
| [ ] 190 Other Contract |    Product Liability | [ ] 380 Other Personal | [ ] 720 Labor Management | **SOCIAL SECURITY** |    Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal |    Property Damage |    Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise |    Injury | [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury - |    Product Liability | [ ] 751 Family and Medical | [ ] 863 DIWC/DIWW (405(g)) |    Exchange |
| |    Medical Malpractice | |    Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee |    Income Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff |    Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ |    Sentence | |    or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability |    Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** |    26 USC 7609 |    Act/Review or Appeal of |
| |    Employment | **Other:** | [ ] 462 Naturalization Application | |    Agency Decision |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| |    Other | [ ] 550 Civil Rights |    Actions | |    State Statutes |
| | [ ] 448 Education | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - | | | |
| | |    Conditions of | | | |
| | |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1   Original
Proceeding
- [ ] 2   Removed from
State Court
- [ ] 3   Remanded from
Appellate Court
- [ ] 4   Reinstated or
Reopened
- [ ] 5   Transferred from
Another District
*(specify)*
- [ ] 6   Multidistrict
Litigation -
Transfer
- [ ] 8   Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. 227
Brief description of cause:
Illegal telemarketing calls

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 77,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
September 23, 2025

SIGNATURE OF ATTORNEY OF RECORD
*Mark W Dobronski*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?          ☐ Yes
                                                                        ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.          Other than stated above, are there any pending or previously
            discontinued or dismissed companion cases in this or any other     ☐ Yes
            court, including state court? (Companion cases are matters in which ☑ No
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :

# MARK W. DOBRONSKI
**POST OFFICE BOX 99**
**DEXTER, MICHIGAN 48130-0099**
**(734) 641-2300**
**markdobronski@yahoo.com**

September 23, 2025

United States District Court
Attn: Clerk's Office
231 West Lafayette Boulevard, 5th Floor
Detroit, Michigan 48226-2700

      Re:    NEW FILING
              Mark W. Dobronski v. Gen Digital Inc.

Dear Sir or Madam:

Enclosed please find:

- Check number 1073, in the amount of $405.00, representing the required filing fee;

- Civil Cover Sheet

- Summons; and,

- Complaint

Please file the Complaint in your usual course and return the signed/sealed Summons to the attention of the undersigned so that the undersigned may arrange service.

Please ensure that Plaintiff's e-mail address (markdobronski@yahoo.com) is entered on the docket so that Plaintiff receives electronic notifications of filings.

Thank you for your attention to this matter.

Respectfully,

Mark W. Dobronski

MWD/hp







PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

This package is made from post-consumer waste. Please recycle - again.

UNITED STATES POSTAL SERVICE

**P**

US POSTAGE PAID
**$11.00**
Origin: 48130
08/23/25
2525100130-05

**PRIORITY MAIL®**

0 Lb 8.90 Oz
RDC 03

C052

EXPECTED DELIVERY DAY: 09/28/25

USPS TRACKING® #

9505 5123 0453 5268 8042 42





SHIP
TO:
231 W LAFAYETTE BLVD
DETROIT MI 48226-2700

USPS.COM/PICKUP

To schedule free Package Pickup,
scan the QR code.







FROM:

MARK W DOBRONSKI
PO BOX X9
DEXTER, MI 48130-0099

Case: 2:25-cv-13041
Assigned To: Murphy, Stephen J., III
Referral Judge: Stafford, Elizabeth A.
Assign. Date: 9/26/2025
Description: CMP DOBRONSKI V. GEN DIGITAL INC. (NA)

TO:

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700

RECEIVED
SEP 26 2025
CLERK'S OFFICE
U.S DISTRICT COURT